UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| BEAZLEY INSURANCE COMPANY, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>YRC WORLDWIDE INC., JAMES L. WELCH, STEPHANIE D. FISHER, JAMIE G. PIERSON and DARREN D. HAWKINS,<br><br>        Defendants. | Case No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Beazley Insurance Company, Inc. ("Beazley") states by way of a complaint against Defendants YRC Worldwide Inc. ("YRC"), James L. Welch, Stephanie D. Fisher, Jamie G. Pierson and Darren D. Hawkins (the "Individual Defendants," collectively, "Defendants") as follows:

## NATURE OF THE ACTION

1.      This is an action for a declaratory judgment that Beazley does not owe insurance coverage to Defendants for certain claims against Defendants arising from allegations that YRC engaged in a scheme to fraudulently overcharge YRC's customers, including the United States government, for freight shipping services.

2.      YRC is a holding company that, through its operating subsidiaries, including YRC Freight, Inc. ("YRC Freight"), offers freight shipping services. YRC Freight was created through

the 2003 acquisition by Yellow Transportation, Inc. ("Yellow") of Roadway Express, Inc. ("Roadway").  In 2009, Yellow and Roadway merged to become YRC, Inc. (now YRC Freight).

3.     In November 2008, a whistleblower commenced a *qui tam* action (the "Whistleblower Action") against Roadway and Yellow alleging that the companies and their employees, agents and co-conspirators deliberately overcharged the United States government for freight shipping services in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq*.

4.     Thereafter, the Department of Justice began an investigation into the overcharge scheme (the "DOJ Investigation") that eventually led the DOJ to file a complaint in intervention in the Whistleblower Action in December 2018.

5.     After the Whistleblower Action and DOJ Investigation were publicly disclosed in December 2018, YRC's shareholders began to assert claims against YRC and Individual Defendants, among others, based on the overcharge scheme.  In January 2019, a YRC shareholder commenced a securities class action against YRC and certain Individual Defendants alleging securities-law violations arising from the overcharge scheme.  In March 2019, YRC received a shareholder demand to inspect the company's books and records pursuant to Section 220 of the Delaware General Corporation Law.   In May and October 2019, YRC shareholders also commended two derivative actions on behalf of YRC against Individual Defendants and others based on the overcharge scheme.

6.     Defendants sought coverage from Beazley for these 2019 matters (the "Underlying Claims").

7.     Coverage for the Underlying Claims is not available under the various terms, conditions, definitions and exclusions of the Advanced Boardroom and Company Protection

Policy, with a Policy Period of October 15, 2018 to October 15, 2019, issued by Beazley to YRC (the "Policy").

8.      In particular, and without limitation, Beazley contends that coverage is not available for the Underlying Claims under the Policy's insuring agreements because the Underlying Claims, together with the Whistleblower Action, constitute a single "Claim" that was not "first made" during the Policy Period.

9.      Coverage for the Underlying Claims is separately precluded by two policy exclusions. First, the Prior and Pending Litigation Exclusion bars coverage because each Underlying Claim is based upon, arises out of, directly or indirectly results from, or in any way involves the subject matter of the Whistleblower Action and DOJ Investigation, namely, the overcharge scheme.  Second, the Retroactive Date Exclusion separately bars coverage because each Underlying Claim is based upon, arises out of, directly or indirectly results from, or in any way involves wrongful acts and conduct, *i.e.*, the overcharge scheme, beginning before and continuing after the July 22, 2011 Retroactive Date that are interrelated and share a common nexus.

10.     By this action Beazley seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 regarding Beazley's rights and obligations under the Policy.

## PARTIES

11.     Beazley Insurance Company, Inc. is an insurer organized under the laws of the State of Connecticut, with its principal place of business in Farmington, Connecticut.

12.     Defendant YRC Worldwide Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Overland Park, Kansas.  YRC is an Insured under the Policy.

13.     Defendant James L. Welch was the CEO of YRC between July 2011 and April 2018, and a member of YRC's board of directors between July 2011 and July 2018.  Defendant Welch purports to be an Insured Person under the Policy.  Upon information and belief, Defendant Welch is a citizen of the State of Kansas.

14.     Defendant Stephanie D. Fisher was the CFO of YRC from May 2017 until December 2019 and the Vice President and Controller of YRC from May 2012 until May 2017. Defendant Stephanie Fisher purports to be an Insured Person under the Policy.  Upon information and belief, Defendant Fisher is a citizen of the State of Kansas.

15.     Defendant Jamie G. Pierson was the Executive Vice President and CFO of YRC from November 2011 until December 2016 and CFO and a member of the board of directors from December 2019 until November 2020.  Defendant Pierson purports to be an Insured Person under the Policy.  Upon information and belief, Defendant Pierson is a citizen of the State of Texas.

16.     Defendant Darren D. Hawkins has served as the CEO and a member of the board of directors of YRC since April 2018 and was the President and COO of YRC from January 2018 until April 2018.  Defendant Hawkins purports to be an Insured Person under the Policy.  Upon information and belief, Defendant Hawkins is a citizen of the State of Kansas.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this declaratory judgment action based upon 28 U.S.C. § 1332(a) because Plaintiff Beazley is not a citizen of the same state as any Defendant and the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

18.     This Court has personal jurisdiction over Defendants because Defendants are domiciled in the State of Kansas and/or transact business in the State of Kansas, the specific conduct at issue in this case originated in and emanated from this district, and Defendants could reasonably anticipate litigation in this district under traditional notions of fair play and substantial justice.

19.     This action is properly filed as a declaratory judgment action pursuant to 28 U.S.C. § 2201 because an actual controversy of a ripe and justiciable nature exists between the parties.

20.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in the State of Kansas and 28 U.S.C. § 1391(b)(3) because the Defendants are subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL BACKGROUND

### A.     The Policy

21.     Beazley issued the Policy, bearing policy number V11C9C180801, to YRC at 10990 Roe Avenue, Overland Park, Kansas, 66211.  A copy of the Policy is annexed as Exhibit A.

22.     Among other things, the Policy, subject to its terms, conditions and exclusions, provides coverage for "Claims" first made and reported during the Policy Period – October 15, 2018 to October 15, 2019.

23.     "Claim" means, among other things, "any written demand for monetary damages, non monetary relief, injunctive relief or other relief against any of the Insureds, or any civil, criminal, administrative, regulatory, arbitration or mediation proceedings or other alternative dispute resolution process initiated against any of the Insureds . . . ."

24.     Section IV.G of the Policy provides:

Any Claim, Investigation, Inquiry or Books and Records Demand having as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions shall be deemed a single Claim and shall be deemed to have been first made at the earliest of the following dates:

1. the date on which the Books and Records Demand is first received;

2. the date on which the Inquiry is first reported;

3. the date on which the Investigation is first commenced; or

4. the date on which the Claim is first made.

**Prior and Pending Litigation Exclusion**

25.     The Prior and Pending Litigation Exclusion provides in relevant part that Beazley

"shall not be liable to make any payment in connection with that portion of any Claim . . . :"

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving: . . .

3.      any written demand, suit, investigation or other proceeding pending, or order, decree or judgment entered, against any Insured prior to the date set forth in Item K. of the Declarations, or any Wrongful Act, fact, circumstance or situation underlying or alleged therein."

26.     The date set forth in Item K of the Declarations is July 22, 2011.

**Retroactive Date Exclusion**

27.     The Retroactive Date Exclusion provides in relevant part that Beazley "shall not be

liable to make any payment in connection with that portion of any Claim . . . :"

based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving: . . .

1.      any Wrongful Act actually or allegedly committed or any conduct actually or allegedly undertaken prior to 12:01 a.m. Local Time on 22-Jul-2011,

6

2.  any other Wrongful Act occurring on or subsequent to the date stated in 1. above which, together with a Wrongful Act occurring prior to such date, would constitute Interrelated Wrongful Acts, or

3.  any other conduct occurring on or subsequent to the date stated in 1. above, together with conduct occurring prior to such date, have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

28.   "Wrongful Act" is defined in relevant part as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty…."

29.   "Interrelated Wrongful Acts" means "Wrongful Acts which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts circumstances, situations events or transactions."

**B.**     **The Whistleblower Lawsuit and DOJ Investigation**

30.   On November 3, 2008, the Whistleblower Action, styled *United States, ex rel. James Hannum v. Roadway Express, Inc., et al.*, was commenced in the United States District Court for the Western District of New York.  The complaint is annexed hereto as Exhibit B.

31.   The complaint in the Whistleblower Action alleges that Roadway and Yellow, beginning in 2004 and 2006 respectively, systematically and fraudulently overcharged the United States government for shipment and delivery services in violation of the False Claims Act. According to the Whistleblower complaint, Roadway and Yellow conducted weight verifications of shipments they received from the United States government.  When the shipments weighed more than the United States government had initially determined, the companies would increase the amount invoiced.  However, when the shipments weighed less, the companies would perform

no downward adjustment, thus deliberately overcharging the United States government for shipments that the companies knew weighed less than what was charged.

32.     In or around 2009, the Department of Justice is alleged to have issued a civil investigative demand and commenced the DOJ Investigation.   Between 2009 and 2018, the Department of Justice is alleged to have conducted an extensive investigation of the overcharge scheme, which included the production of hundreds of thousands of documents by YRC, and interviews and testimony taken from at least 32 witnesses, including Defendant Welch. On November 26, 2018, the Department of Justice filed a notice of election to intervene in the Whistleblower Action and on December 12, 2018 filed a complaint in intervention on behalf of the United States Department of Defense ("DOJ Complaint").   The DOJ Complaint is annexed hereto as Exhibit C.

### C.     The Underlying Claims

33.     The overcharge scheme has resulted in the assertion of various claims against YRC and Individual Defendants by YRC's shareholders.

### The Securities Action

34.     On January 2, 2019, a YRC shareholder commenced a putative class action lawsuit captioned *Lewis v. YRC Worldwide Inc., et al.* (the "Securities Action") against YRC, Defendant Welch, Defendant Pierson, and Defendant Fisher in the United States District Court for the Northern District of New York.   The amended complaint, filed on June 14, 2019, which also included Defendant Hawkins as a defendant, is annexed hereto as Exhibit B.   According to the amended complaint, following the news of the overcharge scheme and the DOJ Complaint, shares

of YRC fell by more than 28%, from an opening price on December 14, 2018 of $4.41 per share, to $3.17 per share at close.

35.     The amended complaint dedicates at least 48 paragraphs, spanning approximately 15 pages, to the details of the overcharge scheme underlying and alleged in the Whistleblower Action and the DOJ Investigation.

36.     As to the overcharge scheme, the amended complaint alleges, among other things, that the misconduct began in at least September 2005 and continued through March 2018:

> [F]rom at least September 2005 through at least the end of the Class Period [March 1, 2018], Company executives, including Defendant Welch, created, implemented, or authorized a fraudulent scheme whereby the Company's customers were materially overcharged for shipments based on weights that were higher than actual weights, and thereby—according to YRC's internal emails—generated at least $2 million per month in illicit revenue.

37.     The amended complaint asserts violations of Sections 10 and 20(a) of Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 based on allegedly false and misleading statements arising from the overcharge scheme.  As YRC has explained in briefing before the Second Circuit in the underlying action:

> The Complaint [in the Securities Action] asserts violations of § 10(b) of the Securities Exchange Act . . . and SEC Rule 10b-5 . . . as well as control-person liability against the Individual Defendants under Exchange Act § 20(a) . . . based on allegedly false and misleading statements arising from the 'overcharge scheme.'   Plaintiffs contend that YRC's alleged misrepresentations and failure to disclose the DOJ investigation caused YRC's financial statements and other disclosures to be materially false or misleading during the Class Period[.]  *See* Brief for Defendants-Appellees at 47, *City of Warwick Retirement Fund v. YRC Worldwide Inc.*, No. 20-1427 (2d Cir. Nov. 9, 2020).

38.     YRC similarly informed the underlying trial court that the securities-law violations at issue in the amended complaint arise from the False Claims Act violations and overcharge scheme:

> This putative securities class action arises from alleged violations of the Federal False Claim Act (the 'FCA') and other laws by YRC Worldwide Inc…. [Plaintiffs] allege that YRC engaged in a years'-long scheme to overcharge its customers for 'shipments based on weights that were higher than actual weights' . . . – a purported practice that lead to a *qui tam* action under the FCA and, *ten years later*, to a suit by the United States on behalf of the Department of Defense, a YRC customer.  Plaintiffs contend that YRC's alleged conduct and its failure to disclose a pending investigation by the Department of Justice caused YRC's financial statements and other disclosures to be materially false or misleading during the Class Period[.] *See* Defendants' Mem. Of Law in Support of Mot. to Dismiss Lead Plaintiffs' Am. Compl. at 1, *Lewis v. YRC Worldwide Inc.*, No. 1:19-cv-0001, 2020 WL 1493915 (N.D.N.Y Mar. 27, 2020).

**The Derivative Actions**

39.     On May 29, 2019, a YRC shareholder commenced a derivative lawsuit styled *Hastey v. Welch, et al.* (the "*Hastey* Action") on behalf of YRC against Defendant Welch, Defendant Pierson and Defendant Fisher, among others, in the United States District Court for the District of Kansas.  The complaint is annexed hereto as Exhibit C.

40.     The *Hastey* complaint devotes approximately 19 paragraphs over five pages to the overcharge scheme underlying the Whistleblower Action and DOJ Investigation.

41.     As to the overcharge scheme, the *Hastey* complaint alleges, among other things, that the misconduct occurred from at least September 2005 to October 2013:

> From at least September 2005 to October 2013, YRC Freight, Yellow Transportation and Roadway Express violated the False Claims Act by overcharging the United States Department of Defense (the 'DOD') for freight carrier services by failing to comply with the contractual terms of freight contracts between the DOD and the Company and related government procurement rules, including by systematically overcharging

the government.  The misconduct also included causing the Company's customers, including the DOD, to overpay for shipments that were lighter, and therefore cheaper, than the weights they were charged for (collectively, the 'Reweighing Misconduct').

42.     The *Hastey* complaint asserts four causes of action, each of which arises out of and is based upon the overcharge scheme.

43.     On October 15, 2019, a second derivative lawsuit styled *Broughton v. Hawkins, et al.* (the "*Broughton* Action") was commenced on behalf of YRC against Defendant Welch, Defendant Pierson, Defendant Fisher and Defendant Hawkins, among others, in the United States District Court for the District of Delaware.  The complaint is annexed hereto as Exhibit D.

44.     The *Broughton* complaint devotes approximately 15 paragraphs over five pages to the overcharge scheme underlying the Whistleblower Action and DOJ Investigation.

45.     As to the overcharge scheme, the *Broughton* complaint alleges, among other things, that "beginning at least in September 2005 through at least [December 14, 2018], the Company's executives implemented a fraudulent overcharging scheme by eliminating negative weight corrections.  The overcharging scheme increased YRC's revenue by $2 million per quarter."

46.     The *Broughton* complaint asserts three causes of action, each of which arises out of and is based upon the overcharge scheme.

47.     The *Hastey* Action and *Broughton* Action are referred to collectively herein as the "Derivative Actions."

**220 Demand**

48.     On March 28, 2019, a YRC shareholder wrote to the company demanding to inspect YRC's books and records pursuant to Section 220 of the Delaware General Corporation Law (the "220 Demand").

49.     The 220 Demand devotes five single-spaced pages to the overcharge scheme alleged in and underlying the Whistleblower Complaint and DOJ Investigation.

50.     Based on this alleged wrongdoing, the 220 Demand asserts, among other things, that there is a "credible basis" to investigate whether YRC board members and executives "engag[ed] in, facilitat[ed], and attempt[ed] to cover up false and fraudulent overcharges for shipping weight fees" and "failed to disclose that . . . YRC was intentionally and wrongfully manipulating weighing procedures to the detriment of its clients."

### D.    No Coverage Exists for the Underlying Claims

51.     By way of example, and without limiting the terms, conditions, and exclusions of the Policy, no coverage exists for the Underlying Claims under the Policy for reasons summarized below.

52.     First, coverage is not available for the Underlying Claims under the Policy's insuring agreements which, subject to their terms conditions and exclusions, afford coverage for "Claims" first made and reported during the Policy Period.

53.     Any "Claim, Investigation, Inquiry or Books and Records Demand" that has a "common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions shall be deemed a single Claim and shall be deemed to have been made at the earliest of the following dates . . . (4) the date on which the Claim is first made."

54.     The Underlying Claims, DOJ Investigation and the Whistleblower Action have as a common nexus facts, circumstances, situations, events, transactions (or series of facts, circumstances, situations, events or transactions) – *i.e.*, the overcharge scheme allegedly adopted

by YRC Freights' predecessors (Yellow and Roadway) in or about 2005 or 2006, and continued

by YRC Freight (created by the 2009 merger of Yellow and Roadway), through at least 2018.

55.     As such, the Underlying Claims, DOJ Investigation and the Whistleblower Action

are deemed to be a single "Claim."

56.     No coverage exists under the Policy for that "Claim" because it was not first made

during the Policy Period.

57.     Second, coverage for the Underlying Claims is separately precluded by the Prior

and Pending Litigation Exclusion, pursuant to which coverage is not available for any claim "based

upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way

involving . . . any written demand, suit, investigation or other proceeding pending . .. against any

Insured prior to [July 22, 2011], or any Wrongful Act, fact circumstance or situation underlying

or alleged therein."

58.     Coverage is barred under the Prior and Pending Litigation Exclusion because each

Underlying Claim is "based upon," "aris[es] out of," directly or indirectly result[s] from" or "in

any way involv[es]" the subject matter of the prior Whistleblower Lawsuit and the DOJ

Investigation –*i.e.,* the decades-long fraudulent scheme to overcharge the U.S. government for

freight services.

59.     Third, coverage for the Underlying Claims is also precluded by the Retroactive

Date Exclusion, pursuant to which coverage is not available for, among other things, any claim

"based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any

way involving" Wrongful Acts or conduct occurring before and after the Retroactive Date, July

22, 2011, where such Wrongful Acts or conduct "have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions."

60.     The Retroactive Date Exclusion bars coverage because, among other reasons, each Underlying Claim is "based upon," "aris[es] out of," directly or indirectly result[s] from" or "in any way involv[es]" Wrongful Acts and conduct (*i.e.*, YRC's overcharging misconduct) occurring before and after July 22, 2011.  The Wrongful Acts and conduct occurring before and after July 22, 2011 share a common nexus because they involve the same overcharging scheme.

       **E.**      **The Parties Have a Dispute Over Insurance Coverage**

61.     On January 10, 2020, Beazley notified Defendants that the Underlying Claims are not covered under the Policy and that Beazley has no obligation to pay Defendants for any losses, costs, charges, and/or expenses accrued by Defendants in connection with these matters.  Beazley maintained its position regarding coverage in a letter dated January 26, 2021.

62.     The parties have a disagreement as to the coverage available for the Underlying Claims.  Accordingly, Underwriters seek a declaratory judgment as to the scope and amount of their obligations under the Policy.

### COUNT I
### (Declaratory Judgment – Securities Action)

63.     Beazley re-alleges and incorporates the allegations set forth in paragraphs 1-62 as if fully stated herein.

64.     Beazley's obligations are determined by the terms, conditions, and exclusions of the Policy, and are subject to the applicable retention, limits of liability, and other provisions therein.

65.     Beazley has no obligation to pay Defendants for any losses, costs, charges, and/or expenses accrued by Defendants in connection with the Securities Action.

66.     An actual, ripe, and justiciable controversy exists between Beazley and Defendants regarding the parties' respective rights and obligations under the Policy with respect to the Securities Action.

### COUNT II
**(Declaratory Judgment – Derivative Actions)**

67.     Beazley re-alleges and incorporates the allegations set forth in paragraphs 1-66 as if fully stated herein.

68.     Beazley's obligations are determined by the terms, conditions, and exclusions of the Policy, and are subject to the applicable retention, limits of liability, and other provisions therein.

69.     Beazley has no obligation to pay Defendants for any losses, costs, charges, and/or expenses accrued by Defendants in connection with the Derivative Actions.

70.     An actual, ripe, and justiciable controversy exists between Beazley and Defendants regarding the parties' respective rights and obligations under the Policy with respect to the Derivative Actions.

### COUNT III
**(Declaratory Judgment – 220 Demand)**

71.     Beazley re-alleges and incorporates the allegations set forth in paragraphs 1-70 as if fully stated herein.

72.     Beazley's obligations are determined by the terms, conditions, and exclusions of the Policy, and are subject to the applicable retention, limits of liability, and other provisions therein.

73.     Beazley has no obligation to pay Defendants for any losses, costs, charges, and/or expenses accrued by Defendants in connection with the 220 Demand.

74.     An actual, ripe, and justiciable controversy exists between Beazley and Defendants regarding the parties' respective rights and obligations under the Policy with respect to the 220 Demand.

## REQUEST FOR RELIEF

WHEREFORE, Beazley respectfully requests that this Court enter judgment regarding Beazley's rights and obligations under the Policy with respect to the Securities Action, Derivative Actions and 220 Demand; and awarding Beazley such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Beazley hereby demands a trial by jury on all claims so triable.


Dated: February 1, 2021


KUTAK ROCK LLP

By:     */s/ M. Courtney Koger*
        M. Courtney Koger   KS#15271
        2300 Main Street, Suite 800
        Kansas City, Missouri 64108-2432
        Tel: (816) 502-4653
        Fax: (816) 960-0041
        courtney.koger@kutakrock.com

16

SIMPSON THACHER & BARTLETT LLP

Bryce L. Friedman (*pro hac vice* forthcoming)
Summer Craig (*pro hac vice* forthcoming)
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
bfriedman@stblaw.com
scraig@stblaw.com

*Attorneys for Plaintiff Beazley Insurance
Company, Inc.*